UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

DOMENICO CEFALU,

                Defendant.
------------------------------------------------------------x

08 CR 76 (JBW)

**NOTICE OF MOTION**

| | |
|---|---|
| MOTION BY: | JOSEPH W. RYAN, JR., PC<br>Attorneys for Defendant<br>DOMENICO CEFALU |
| DATE AND TIME: | To Be Scheduled By the Magistrate Judge, per Order of March 14, 2008 |
| PLACE: | United States Courthouse<br>225 Cadman Plaza East<br>Courtroom 10B<br>Brooklyn, NY 11201 |
| RELIEF SOUGHT: | The Court enter an Order (a) Directing the Government to provide an index of tape recordings it intends to offer in its case-in-chief against Mr. Cefalu at trial; (b) Establishing stringent deadlines for discovery; and (c) For such other and further relief as the Court deems just and proper. |
| SUPPORTING PAPERS: | Declaration of Joseph W. Ryan, Jr., dated March 24, 2008, and Exhibits attached. |
| REPLY PAPERS: | To be determined by the Magistrate Judge. |

Dated: Uniondale, New York
       March 24, 2008

Respectfully submitted,

_____
JOSEPH W. RYAN, JR. (JR2408)
Attorney for DOMENICO CEFALU
1425 RexCorp Plaza
Uniondale, NY 11556
Tel. 516-663-6515

To: All counsel (ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

UNITED STATES OF AMERICA,         :       Docket No. CR 08-76

      - against -         :

               :       **DECLARATION**

DOMENICO CEFALU,

               :

      Defendant.

               :
-------------------------------------------------------- x

    JOSEPH W. RYAN, JR, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, the following:

    1. This declaration is submitted, on behalf of defendant Domenico Cefalu, in support of a pre-trial motion for an Order granting the following relief:

    (a) Directing the Government to provide an index of tape recordings it intends to offer in its case-in-chief against defendant Domenico Cefalu at trial;

    (b) Establishing stringent deadlines for discovery; and

    (a) For such other and further relief as the Court deems just and proper.

### THE CASE AGAINST MR. CEFALU

    2. I represent Mr. Domenico Cefalu, the alleged "Acting Underboss" of the Gambino crime family. Mr. Cefalu is charged in nine of the eighty counts of the Indictment. RICO Count One alleges that he is one of sixty-two defendants who, over a period of 32 years, have committed a vast variety of crimes for the economic benefit of the Gambino crime family. Judge Garaufis summarized the RICO count as follows:

> The first count of the Indictment alone alleges 56 predicate RICO acts – including seven murders, murder conspiracies or attempted murders, more than a dozen separate extortion schemes, robbery, narcotics trafficking, theft, loansharking, illegal gambling, money laundering, securities fraud, mail fraud, embezzlement, and bribery.

(See Docket Entry # 1.)

3. Mr. Cefalu is charged in three of the alleged extortion schemes. Each scheme occurred within the period from December 2003 through January 2008, in Staten Island, New York. The three schemes involve one "victim": John Doe #4, believed to be FBI cooperating informant Joseph Vollaro, according to wide-spread publicity.

### (a) "The Staten Island Cement Company Profits" Conspiracy

4. Under the first extortion scheme, (Count One [RA 24], and Counts Ten & Eleven,) John Doe #4 is alleged to have paid approximately $60,000 over a three year period (approximately $385 per week) "induced through wrongful use of … fear" in order to operate his cement company in Staten Island, NY (believed to be Master-Mix of Staten Island, Inc.). In this alleged scheme, there are eleven defendants charged. The prosecution alleges that Mr. Cefalu was the ultimate recipient of some of the payments that "were passed along to the Gambino family administration." Gov. Detention Mem. at 50-53.

### (b) "The Staten Island Cement Company Sale" Conspiracy

5. Under the second extortion scheme (Count One [RA 54] and Counts Seventy-Five & Seventy-Six) John Doe #4 agreed to pay $100,000 "induced through wrongful use of … fear." The $100,000 was to be paid out of proceeds from the sale of John Doe #4's cement company, Master-Mix. The prosecution alleges that an unspecified "payment" was made by John Doe #4 to a co-defendant. Gov. Detention Mem. at 54. In this scheme,

there are six defendants charged, all of whom are common defendants in the first extortion scheme with the exception of one defendant. The prosecution has not alleged Mr. Cefalu's role in this scheme.

### (c) "The NASCAR Construction Site" Conspiracy

6. Under the third extortion scheme (Count One [RA 38] and Counts Thirty-Eight & Thirty-Nine ), John Doe #4 is alleged to have paid $13,000 "induced through wrongful use of …fear" for his trucking company to be able dump excavation soil onto a land-fill that was being developed into a race track facility. In this alleged scheme, there are seven defendants charged, three of whom are common to all three schemes, two of whom are common to the first scheme, and the remaining two are charged only in this scheme The prosecution has not alleged Mr. Cefalu's role in the scheme.

7. In support of these charges, the prosecution intends to offer (a) the testimony of John Doe #4, (b) "corroborated by...scores" of consensual tape recordings made by John Doe #4, (c) visual and photographic surveillance evidence of the defendants' actions, and (d) multiple witnesses "who are expected" to establish the Gambino "enterprise" elements under RICO. Gov. Detention Memo. at 56.

### MOTION FOR DISCOVERY

10. We respectfully propose that the Court set stringent discovery deadlines, subject to sanctions, that would motivate discovery production, thus ensuring that Mr. Cefalu and the related co-defendants can be prepared for a speedy trial. Moreover, enforced discovery would enable Mr. Cefalu to evaluate the prosecution's written plea offer by the May 28, 2008 deadline set by the prosecution.

11. Our frustration in attempting to secure prompt discovery and "meet and

confer" conferences with the prosecution is well documented. See Exh. "A" (Discovery Demand, recent correspondence, and e-mail reply) (see E.D.N.Y. L. Crim. R. 16.1)).

12. The bulk of discovery materials appear to be consensual recordings made by John Doe #4 and the documentation of the underlying business transactions, such as the corporate records of Master-Mix concerning its operation and eventual sale.

13. There are approximately 1,354 consensual recordings which consume more than 500 hours. (See Docket Entry # 339). Because of the sheer volume of tape, we require an index of those recordings that the prosecution will rely upon to prove, for example, that the extortion payments in the first alleged extortion scheme were destined for Mr. Cefalu as "Acting Underboss." Based upon preliminary disclosures, it does not appear that the prosecution contends that Mr. Cefalu ever directly threatened John Doe #4. There being no such conversations, we respectfully submit, that it is unfair and unreasonable to require Mr. Cefalu to review more than 500 hours of recordings in order to ascertain in which conversations he is mentioned and which conversations the prosecution will rely upon to prove its case against him. See U.S. v. Lino, 2000 U.S. Dist. LEXIS 18753 (S.D.N.Y. Dec. 29, 2000) (ordering government to designate, "on a preliminary basis," audio tapes it intended to rely on at trial in its case-in-chief).

14. Furthermore, prior to securing the massive indictment, the prosecution must have reviewed and analyzed the recorded conversations for more than four years with the aid of John Doe #4. The prosecution is familiar with each conversation as it relates to each defendant, and would not be burdened by providing an index that has most likely been created upon the prosecution's review of each recording.

15. In accordance with Rule 16 (E) (ii) of the Federal Rules of Criminal

4

Procedure, the government must permit the defendant to inspect Documents and Objects which *"the government intends to use the item in its case-in-chief at trial."* We propose that such an index be produced at an early date in April, or be subject to sanctions, such as an order of preclusion.

16. Our objective is to remove the Courts "complex" designation, and attempt to be ready for trial within the 70-day Speedy Trial Clock.

17. Any complaint that our discovery proposal is unduly burdensome is undermined by the prosecution's decision to return a gargantuan RICO indictment in the face of Court condemnation against mega-trials as long as twenty years ago. See Casamento, at 1149-53; See also Gallo, at 749-59.

WHERFORE, your Declarant respectfully prays that the Court enter an Order (a) Directing the Government to provide an index of tape recordings it intends to offer in its case-in-chief against Mr. Cefalu at trial; (b) establishing stringent deadlines for discovery; and (c) for such other and further relief as the Court deems just and proper.

Dated:  March 24, 2008
        Uniondale, NY

_____
JOSEPH W. RYAN, JR.

5

# Exhibit "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ x

UNITED STATES OF AMERICA,  :  Docket No. CR 08-76

    - against -  :

               :  **REQUEST FOR DISCOVERY**

DOMENICO CEFALU,

        Defendant.  :

               :

------------------------------------------------------ x

   Pursuant to Rules 7 and 16 of the Federal Rules of Criminal Procedure, we hereby request on behalf of defendant DOMENICO CEFALU the following be made available on or before March 13, 2008. Given the extraordinary nature of the case, we would appreciate partial, interim access and production:

## DOCUMENT REQUEST

1. All written and recorded statements made by DOMENICO CEFALU and co-defendants, including the substance of any oral statement made by DOMENICO CEFALU or co-defendants, whether before or after arrest, in response to interrogation by any person then known to DOMENICO CEFALU or co-defendants to be a government agent, or in response to any government official, including but not limited to, the District Attorney's Office, Federal Bureau of Investigation ("FBI"), and confidential informants.

2. All documents and objects of any sort which are in the possession, custody, or control of the government and are intended for use by the government in evidence in chief at the trial or were obtained from or belonging to DOMENICO CEFALU or co-defendants.

3. All results or reports of any physical or mental examinations and of scientific tests or experiments made in connection with the case.

4. A list of the names and addresses of all witnesses who the government intends to call in the presentation of its case-in-chief:

  (a) the full name and address of each such witness;

  (b) the federal and local arrest and conviction record, including an up-to-date record of dispositions;

  (c) each threat, promise, assurance, representation, statement of policy, or any other statement made by any governmental authority which would reasonably give hope for lenient treatment or which could be considered

        an inducement to cooperate with the government;

- (d) each investigation by any law enforcement or regulatory agency which existed after the indictment or during the investigation of this matter;

- (e) each investigation by any law enforcement or regulatory agency which existed after the indictment or during the investigation of this matter;

- (f) any jeopardy from any law enforcement agency or regulatory body, including but not limited to, the Department of Justice ("DOJ"), the Department of Treasury, any local District Attorney's office, New York Attorney General's office, and any other governmental agency;

- (g) any writing reflecting any agreement or understanding with the Federal or State government; if no writing exists, the substance of such agreement or understanding;

- (h) any records which relate to the subject matter as to which each said witness may testify at trial; and

- (i) any and all records of monies received by any witnesses from Federal or local law enforcement authorities, and any and all records relating to benefits received under any witness protection program.

5. With respect to electronic surveillance, please provide the following:

- (a) all orders, warrants, and applications made in connection with any electronic surveillance during the course of the investigation leading to the indictment;

- (b) duplicates of all tapes made of electronic surveillance during the course of the investigation, and in the first instance those recordings of DOMENICO CEFALU and any reference to him on third-party recordings, whether by wiretap or consensual recordings made by government agents;

- (c) an index of all recordings, line-sheets, and summaries of recordings to facilitate identifying the more than 500 hours of recordings.

- (d) transcript of all conversations intercepted through electronic surveillance during the course of the electronic surveillance;

- (e) all contemporaneous records, including logs and memoranda, made during the course of the electronic surveillance;

- (f) any and all reports reflecting the manner and execution of electronic surveillance during the course of the investigation;

- (g) identity of all law enforcement personnel who participated in the conduct

                  of the electronic surveillance; and

        (h)     all orders of termination, including applications and reports in support of the termination.

6.     With respect to the execution of search warrants, the inventory filed for each warrant, any photographs, video, or other recordings related to the execution of the warrant.

7.     All documents and objects of any sort which are in the possession, custody, or control of the government and are material to the preparation of the defense, including but not limited to, the following:

Re: The Staten Island Cement Company (Counts Ten, Eleven, and Seventy-Six)

    (a) All records obtained from Master Mix of Staten Island (now owned by Eastern Trucking Company ("ETC")), and Master Mix of New Jersey, including (1) contracts and closing statements for the purchase and sale of the companies, (2) all federal income tax returns, (3) all financial statements prepared for each company; (4) all accounting records, including general, payable, and receivable ledgers (5) all job records (6) all consensual recordings relating to the extortion allegations.

    (b) All records relating to the alleged extortion payments of $60,000 and $100,000, including checks, invoices, petty cash vouchers, and any other records used to generate the funds.

Re: NASCAR Construction Site (Counts Thirty-Eight and Thirty-Nine)

    (a)    All records obtained from Andrews Trucking Co., Dump Masters, Racine Trucking Co., and any other company used by or under the control of John Doe #4 at the NASCAR Construction site including (1) contracts and closing statements for the purchase and eventual sale of the companies, (2) all federal income tax returns, (3) all financial statements prepared for each company; (4) all accounting records, including general, payable, and receivable ledgers.

    (b)    All records obtained from the New York State Department of Environmental Conservation ("DEC"), the NYC Department of Environment Protection ("DEP"), the United States Environmental Protection Agency ("EPA"), the NYC Department of Buildings ("DEB") and any other governmental agency concerning the regulation of the dumping, land-fill operation and construction at the proposed NASCAR race track.

    (c)    All records obtained from the DEC, the EPA, the DEP, the DEB concerning the operation and licensing of Andrews Trucking, Dump Masters, Racine Trucking Co., and any other company used by or under the control of John Doe #4 at the proposed NASCAR race track.

    (d)    All records obtained from the International Speedway Corporation ("ISC") concerning the proposed NASCAR race track construction contract, including contracts issued from ISC to third-party companies engaged in filling the land on-site, and any litigation records arising out of disputes concerning the land-fill and construction the at the proposed NASCAR race track.

    (e)    All records obtained from the NYS Attorney General's Office and the NYC Police Department concerning the operation of Andrews Trucking, Dump Masters, Racine Trucking Co. and any other company used by or in the control of John Doe #4 at the proposed NASCAR race track.

    (f)    All records obtained from Racine Trucking Company ("RTC").

8.    All charts, diagrams or other similar documents, including but not limited to, the charts of Organized Crime families.

## EXPERT REQUEST

9.    A summary of any expert testimony the Government intends to offer in its case-in-chief, the curriculum vitae of the expert witness, and the prior testimony the witness has given in court proceedings as an expert witness.

## OTHER CRIMES, WRONG, OR ACTS

10.    State whether the Government intends to offer proof of other crimes, wrongs, or acts, and if so, provide the general nature of such evidence, including the date, time, and place of occurrence. See Federal Rule of Evidence § 404(b).

## EXCULPATORY EVIDENCE

11.    Set forth all information and evidence which would tend to exculpate the guilt of DOMENICO CEFALU, mitigate the degree of the evidence, or reduce the punishment, including but not limited to, the following;

    (a)    Any information or evidence which would tend to indicate that DOMENICO CEFALU never met John Doe #4 or anyone associated with the Staten Island Cement Company referred to in the Indictment.

    (b)    Any information or evidence which would tend to indicate that DOMENICO CEFALU never met John Doe #4 or anyone associated with the proposed NASCAR race track referred to in the Indictment.

    (c)    Any information of evidence that John Doe #4 was never induced or harbored any fear to make payments of money "through the wrongful use of actual and threatened force, violence or fear" as alleged in the Indictment.

(d) Any information or evidence that John Doe #4 was instructed to instigate, induce, and encourage the defendants to solicit monies from him solely for the purpose of satisfying law enforcement officials demands.

## REQUEST FOR PARTICULARS

## WITH RESPECT TO THE "INTRODUCTION"

12. As to ¶ 13 state approximately <u>when</u> it is alleged that DOMENICO CEFALU became a "soldier, captain and acting boss in the Gambino family," and set forth the evidentiary basis (such as wiretapped conversations) for the allegation that DOMENICO CEFALU was also know as "The Greaseball."

## WITH RESPECT TO COUNT ONE

13. State approximately <u>when</u> it is alleged that DOMENICO CEFALU entered the 33-year alleged conspiracy, and briefly identify what racketeering acts he benefited from and/or participated in to further the RICO conspiracy.

14. State (a) whether DOMENICO CEFALU caused and/or aided and abetted within the meaning of 18 U.S.C. § 2, the commission of the following racketeering acts, and if so, briefly describe DOMENICO CEFALU'S alleged role in the specific racketeering act; and (b) briefly explain <u>how</u> each alleged racketeering act are related to the enterprise rather than separate isolated acts:

| Racketeering Act | Description |
|---|---|
| ONE: | The Murder of Albert Gelb |
| TWO: | The Murder of Michael Cotillo |
| THREE: | The Murder of Salvatore Puma |
| FOUR: | Cocaine Distribution |
| FIVE: | Marijuana Distribution |
| SIX: | The Murder of Louis DiBono |
| SEVEN: | The Robber/Felony Murder of Jose Rivera |
| EIGHT: | Extortion of John Doe #1 |
| NINE: | Extortion of John Doe #2 and John Doe #3 |
| TEN: | Securities Fraud involving Ashton |
| ELEVEN: | Robbery of Papavero Funeral Home |
| TWELVE: | The Murder of Robert Arena and Thomas Maranga |
| THIRTEEN: | The Murder of Thomas Maranga |
| FOURTEEN: | Marijuana Distribution |
| FIFTEEN: | Extortion of John Doe #1 |
| SIXTEEN: | Extortion of John Doe #4 (trucking) |
| SEVENTEEN: | Extortion of John Doe #1 |
| EIGHTEEN: | Extortion of John Doe #1 |
| NINETEEN: | Extortion Extension of Credit |
| TWENTY: | Theft of Union Benefits / Mail Fraud |
| TWENTY-ONE: | Theft of Union Benefits / Mail Fraud |
| TWENTY-TWO: | Extortionate extensions of credit |

| | |
|---|---|
| TWENTY-THREE: | The Murder of John Doe #5 |
| TWENTY-FOUR: | Extortion Staten Island Cement Company |
| TWENTY-FIVE: | Theft of Union Benefits / Mail Fraud |
| TWENTY-SIX: | Theft of Union Benefits / Mail Fraud |
| TWENTY-SEVEN: | Theft of Union Benefits / Mail Fraud |
| TWENTY-EIGHT: | Extortion of Mayrich Construction Site |
| TWENTY-NINE: | Extortion of ADCO Electrical Corp. Debt |
| THIRTY: | Extortion of Pump Truck |
| THIRTY-ONE: | Extortion of El Camino Trucking Dept. |
| THIRTY-TWO: | Extortion of Construction List |
| THIRTY-THREE: | Illegal Gambling – Bookmaking |
| THIRTY-FOUR: | Bribery, Embezzlement, and Mail Fraud |
| THIRTY-FIVE: | Extortion of John Doe #6 |
| THIRTY-SIX: | Theft of Union Benefits/Mail Fraud |
| THIRTY-SEVEN: | Theft of Union Benefits/Mail Fraud |
| THIRTY-EIGHT: | Extortion of NASCAR Construction Site |
| THIRTY-NINE: | Extortion of Excavation Company |
| FOURTY: | Extortion of the Cracolici Dispute |
| FOURTY-ONE: | Extortion of John Doe #7 |
| FOURTY-TWO: | Extortion of John Doe #8 |
| FOURTY-THREE: | Extortion of John Doe #9 |
| FOURTY-FOUR: | Extortion of Liberty View Harbor Construction Site |
| FOURTY-FIVE: | Money laundering of proceeds from John Doe #4 |
| FOURTY-SIX: | Extortion of John Doe #10 |
| FOURTY-SEVEN: | Extortion of John Doe #11 |
| FOURTY-EIGHT: | Extortion of Staten Island Recycling Facility |
| FOURTY-NINE: | Extortion of John Doe #4 and John Doe #12 |
| FIFTY: | Bribery, Mail Fraud, Embezzlement of Laborers' Local 731 |
| FIFTY-ONE: | Illegal Gambling |
| FIFTY-TWO: | Theft of Union Benefits and Mail Fraud |
| FIFTY-THREE: | Theft of Union Benefits and Mail Fraud |
| FIFTY-FOUR: | Extortion of Staten Island Cement Company |
| FIFTY-FIVE: | Extortion of Cement Powder Deliveries |
| FIFTY-SIX: | Extortion of Cement Company Sale |

## WITH RESPECT TO COUNTS TWO THRU EIGHTY

15. State whether DOMENICO CEFALU caused and/or aided and abetted within the meaning of 18 U.S.C. § 2, the commission of the crimes alleged in these Counts, and if so, briefly describe DOMENICO CEFALU'S alleged role alleged role in the specific Count.

WHEREFORE, defendant DOMENICO CEFALU requests that the above information be furnished no later than March 13, 2008.

Dated: February 28, 2008

                                    *Joseph W Ryan JR.*
                                    JOSEPH W. RYAN, JR., P.C.
                                    Attorneys for Defendant
                                    DOMENICO CEFALU
                                    1425 RexCorp Plaza
                                    Uniondale, NY 11556
                                    (516) 663-6515

TO:
Honorable Benton J. Campbell
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11021

Attention: AUSA Daniel D. Brownell

JOSEPH W. RYAN, JR., P. C.

ATTORNEYS AT LAW

JOSEPH W. RYAN, JR.

AMIT SONDHI

1425 REXCORP PLAZA
UNIONDALE, N.Y. 11556-1425
516-663-6515
TELECOPIER: (516) 663-6644
WEBSITE: JoeRyanLaw.com
joeryan@earthlink.net

March 17, 2008

Honorable Benton J. Campbell
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11021

        Attention: AUSA Daniel D. Brownell

        Re: <u>United States v. Domenico Cefalu, 08 CR 76</u>

Dear Mr. Brownell:

        We would appreciate a response to our Discovery Demand dated February 28, 2008, and the opportunity to "meet and confer" after tomorrow's 11:30 a.m. conference before Judge Jack B. Weinstein.

        Thanking you for your consideration, I am

                              Very truly yours,

                              JOSEPH W. RYAN, JR.

Case 1:08-cr-00076-JBW   Document 457   Filed 03/24/08   Page 17 of 17 PageID #: 2418

# RE: Letter

| From: | "Brownell, Daniel (USANYE)" <Daniel.Brownell@usdoj.gov> |
|---|---|
| To: | jwrlaw@ix.netcom.com |
| Subject: | RE: Letter |
| Date: | Mar 17, 2008 7:22 PM |

I won't be at the status conference and won't be available the whole day.
We are working on the discovery and will get it out to you as soon as we can.

-----Original Message-----
From: jwrlaw@ix.netcom.com [mailto:jwrlaw@ix.netcom.com]
Sent: Monday, March 17, 2008 1:49 PM
To: Brownell, Daniel (USANYE)
Subject: Letter

To Daniel D. Brownell:

    Please see the attached letter.  I look forward to seeing you tomorrow.
Thank you.


                  Sincerely,

                  Joseph W. Ryan, JR.