UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
:
UNITED STATES OF AMERICA,          :    Docket No. CR 08-76
:
- against -                        :
:
DOMENICO CEFALU,                   :    **NOTICE OF MOTION**
:
Defendant.                   :
:
-------------------------------------------------- x

| | |
|---|---|
| MOTION BY: | JOSEPH W. RYAN, JR., PC<br>Attorneys for Defendant<br>DOMENICO CEFALU |
| DATE AND TIME: | May 8, 2008 |
| PLACE: | United States Courthouse<br>225 Cadman Plaza East<br>Courtroom 10B<br>Brooklyn, NY 11201 |
| RELIEF SOUGHT: | The Court enter (a) an Order precluding the Government from offering into evidence any document that has not been made available to the defendant Domenico Cefalu on or before May 8, 2008; and (b) For such other and further relief as the Court deems just and proper. |
| SUPPORTING PAPERS: | Declaration of Joseph W. Ryan, Jr., dated April 23, 2008, and Exhibits attached thereto. |
| REPLY PAPERS: | Requested by May 2, 2008 |

Dated: Uniondale, New York
       April 24, 2008

1

Respectfully submitted,

*[signature]*

JOSEPH W. RYAN, JR. (JR2408)
Attorney for Defendant
DOMENICO CEFALU
1425 RexCorp Plaza
Uniondale, NY 11556
Tel. 516-663-6515

To: Clerk of the Court (JBW) (by ECF)
　　All counsel (ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
UNITED STATES OF AMERICA,        :    Docket No. CR 08-76
                                 :
       - against -                :
                                 :
DOMENICO CEFALU,                 :    **DECLARATION**
                                 :
            Defendant.            :
                                 :
------------------------------------------------------- x

JOSEPH W. RYAN, JR, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, the following:

1. This declaration is submitted on behalf of defendant Domenico Cefalu, in support of a pre-trial motion for an Order granting the following relief:

(a) An Order precluding the Government from offering into evidence any document that has not been made available to the defendant Domenico Cefalu on or before May 8, 2008; and

(b) For such other and further relief as the Court deems just and proper.

**PRELIMINARY STATEMENT**

2. This motion is compelled by the prosecution's failure to provide basic, essential discovery materials to enable Mr. Cefalu to defend against this unprecedented, gargantuan Indictment, where the Court has made extraordinary efforts to provide each defendant with "forthwith" discovery on a "rolling "basis in order to accomplish a June 9, 2008 trial date for Mr. Cefalu and the Group "A" defendants. Despite our discovery requests, dating back to February 28, 2008, we have received no transcripts, no surveillance photographs, wholesale redacted applications for eavesdropping orders that

1

are unintelligible, no records of the transactions that gave rise to the extortion charges, and no particulars, such as when Mr. Ceflau is alleged to have assumed the position of "Acting Underboss" of the Gambino Crime Family, and how much money Mr. Cefalu is alleged to have received from the extortion schemes. With regard to the prosecution's "enterprise" case, we have not received charts, expert information, or anything else related to the prosecution's presentation.

3. For Mr. Cefalu, this is a critical failing because he appears to be a "peripheral" defendant at best. Mr. Cefalu is not a participant on any of the 500 hours of consensual recordings made by FBI informant Joseph Vollaro, nor do any of the co-defendant participants implicate Mr. Cefalu as the "Underboss" in the recorded conversations. Finally, we will demonstrate that the prosecution has resisted turning over exculpatory materials in its files which would indicate that during the time period of the alleged extortions, Mr. Cefalu was engaged in innocent conduct, rather than acting as the "Underboss." Mr. Cefalu's conversations with his first cousin, Mr. Dominic Cefalu were being electronically captured by a "bug" device installed pursuant to a Court Order, based upon an allegation that both men were engaged in an illegal Sports Betting Scheme that never resulted in their Indictment. In short, we are at a loss to understand the prosecution's approach to discovery in the face of Court orders, the massive publicity it has generated on this case and the defense discovery requests. See http://www.justice.gov/usao/nye/pr/2008/2008feb07.html.

4. In accordance with Local Rule 16.1, we have made every effort to resolve our disagreements over discover disputes, but to no avail. See, Exhibit "A" – Discovery Summary letter dated April 14, 2008; Prosecution Response letter dated April 22, 2008,

Docket Item # 620.

## THE CASE AGAINST MR. CEFALU

5. Mr. Cefalu is charged in three of the alleged extortion schemes. Each scheme occurred within the period from December 2003 through January 2008, in Staten Island, New York. The three schemes involve one "victim": FBI cooperating informant Joseph Vollaro.

### (a) "The Staten Island Cement Company Profits" Conspiracy

6. Under the first extortion scheme (Count One [RA 24], and Counts Ten & Eleven), Mr. Vollaro is alleged to have paid approximately $60,000 over a three year period (approximately $385 per week) "induced through wrongful use of … fear" in order to open and operate his cement company in Staten Island, NY (Master-Mix of Staten Island, Inc.). Although the prosecution alleges that Mr. Cefalu was the ultimate recipient of some of these payments that "were passed along to the Gambino family administration," Docket Item # 71, Gov. Detention Mem. at 50-53, the prosecution refuses to state what amount of money Mr. Cefalu had allegedly received. Nor have we received any transcripts of conversations of co-defendants the prosecution has represented it will offer into evidence against Mr. Cefalu—who is not a participant in any of the proffered recordings. See Exhibit "B" Items ## 5, 13, 14, 15, 18, and 26.

### (b) "The Staten Island Cement Company Sale" Conspiracy

7. Under the second extortion scheme (Count One [RA 54] and Counts Seventy-Five & Seventy-Six) Mr. Vollaro allegedly agreed to pay $100,000 "induced through wrongful use of … fear." The $100,000 was to be paid out of proceeds from the multi-million dollar sale of Master-Mix of Staten Island Inc. to Eastern Concrete Materials Inc.,

3

a wholly owned subsidiary of a publicly traded company, U.S. Concrete Co. The prosecution alleges that an unspecified "payment" was made by Mr. Vollaro to an unidentified co-defendant. Docket Item # 71, Gov. Detention Mem. at 54. Despite our numerous discovery requests, we do not know how much of the $100,000 was actually paid, who this money was paid to, or how much money was received by Mr. Cefalu. Nor have we received any transcripts of the conversations of co-defendants the prosecution has represented it will offer into evidence against Mr. Cefalu—who is not a participant in any of the proffered recordings. See Exhibit "B" Items ## 5, 13, 14, 15, 18, and 26.

### (c) "The NASCAR Construction Site" Conspiracy

8. Under the third extortion scheme (Count One [RA 38] and Counts Thirty-Eight & Thirty-Nine ), Joseph Vollaro is alleged to have paid $13,000 "induced through wrongful use of …fear" in order to allow his Andrews Trucking Company to dump excavation soil onto a land-fill area that was being developed into a NASCAR race track facility. The prosecution has not alleged Mr. Cefalu's role in the scheme. Despite our discovery request, we do not know how much of the $13,000 was paid, who the money was paid to, or how much of the money was received by Mr. Cefalu. Furthermore, we have not received any transcripts of the conversations of co-defendants the prosecution has represented it will offer into evidence against Mr. Cefalu—who is not a participant in any of the proffered recordings. See Exhibit "B" Items ## 5, 13, 14, 15, 18, and 26.

### The Prejudice to Mr. Cefalu

9. The prejudice to Mr. Cefalu's rests on the prosecution's refusal to answer reasonable discovery requests and its indifference to the Court's mandate of March 14, 2008, which directed the prosecution to provide discovery "forthwith" and on a "rolling"

4

basis. The mandate was re-emphasized by the Court at the status conference on April 9, 2008, which included a direction to provide the defense with *draft* transcripts of the consensual recordings made by the FBI through its informant, Joseph Vollaro. But there is much more to the prosecution's failure to comply with Mr. Cefalu's discovery request than non-compliance. It appears that the prosecution has resisted Mr. Cefalu's discovery request to furnish evidence of Mr. Cefalu's innocence.

10. We refer the Court to our discovery requests relating to a wiretap investigation conducted by the New York State Attorney General's Organized Crime Task Force ("OCTF") jointly with the investigation by the FBI that lead to the instant Indictment. See Exhibit "B" Items ## 16, 19, 23-25, and 27-31. The OCTF commenced an investigation of Mr. Cefalu for allegedly promoting an illegal Sports Betting Scheme. The OCTF secured authorization for eavesdrop warrants on four occasions: May 14, June 13, August 10, and September 14 of 2007, from a series of Judges of the New York Supreme Court.

11. The May 14 and June 13 Orders enabled the OCTF to install a "bug" device in a JEEP vehicle owned and operated by Mr. Cefalu's first cousin, Mr. Dominic Ceflau (a non-defendant). The OCTF alleged that Dominic Cefalu and Mr. Cefalu were both engaged in operating an illegal Sports Betting Scheme as they traveled together in the JEEP around the New York-New Jersey metropolitan area. The "bug" was recording conversations between the two men for *six weeks* from June 1 to July 12, 2007. But the CDs the prosecution has produced *contained no such conversations*. Further, the Court authorization required the prosecution to maintain, logs, "daily plant," and line-sheet summaries, which have not been turned over. See Exhibit "B" Item ## 27 and 28. Nor

5

has the prosecution produced any records made by the Global Positioning Device that tracked the JEEP movements, despite our discovery request. See Exhibit "B" Item ## 19 and 31. Instead, we are told by the prosecution that these matters are not within the scope of discovery. See Exhibit "A" Prosecution Response letter 4/22/08.

12. It is critical to Mr. Cefalu's defense to have the ability to review these JEEP conversations because we believe they would establish the innocent conduct of Mr. Cefalu, at the same time when the Indictment charges that he was acting as the Underboss. But we have been obstructed in our pre-trial efforts to secure discovery materials bearing on this important issue. The prosecution's has refused to answer our discovery request for the particulars as to when Mr. Cefalu allegedly became anointed to that nefarious position. See Exhibit "A" Item # 8 and 12. And the prosecution has refused to identify how much money Mr. Cefalu received as the "Underboss." See Exhibit "B" Item # 7, 14, 15, and 26.

13. Yet to the New York Supreme Court the prosecution alleged in an affidavit that Mr. Cefalu *admitted* he was the "Underboss" of the Gambino Crime Family…the second highest-ranking member…which includes over 100 made members or 'soldiers' and many times that number of associates." See Exhibit "C," excerpt of Gundlach Affidavit dated 8/10/07 at 24-25. This admission was allegedly captured by the JEEP "bug." But the CDs produced in discovery *contain no such admission*, we have been provided with no supporting transcript, and the prosecution has refused to produce the contemporaneous "logs" "daily plant" and "linesheets"sheets which should reflect this so-called startling "admission." See Exhibit "B" Items ## 24 and 27.

14. Prior to the alleged "admission" the prosecution cited as confirmation, a New

6

York Daily News article which identified Mr. Cefalu "as the underboss of the Gambino Crime Family …was printed in the May 14, 2007 edition – the day before we began interceptions." See, Exhibit "D" excerpt of Gundlach Affidavit 6/13/07 at 7, footnote #2. Later the prosecution corrected its citation from the New York Daily News to the New York Post article of the same date. See, Exhibit "E." excerpt of Gundlach Affidavit 9/13/07 at 7, footnote #2.

15. Another obstruction to our pre-trial preparation is the wholesale redactions of relevant information in the eavesdrop applications to capture Mr. Cefalu's conversations in the JEEP. The redactions relate to relevant persons, places, and observations of the prosecution's surveillance team. The facts concealed by the redactions are relevant to our pre-trial investigation in order to locate and interview witnesses to establish that the Mr. Cefalu's conduct was not criminal and was wholly inconsistent with the "Underboss" allegation.

16. A sample of the redactions can be found in the excerpt leading up to the so-called "Underboss" admission. See, Exhibit "C" page 23, ¶ 44. The affidavit states that on June 15, 2007, the investigator observed Mr. Cefalu and his first cousin at 12:10 a.m. The government then redacts the remaining portion of the paragraph; thus, not indicating where the meeting occurred, under what circumstances the alleged admission was made, or the identity of witnessed who may have been present. Disclosure of this basic information, unredacted, would enable our pre-trial investigation to pursue evidence to demonstrate to the jury the absurdity of the prosecution's claim that Mr. Cefalu admitted he was the "Underboss" of the Gambino Crime Family. We respectfully submit that it is no answer for the prosecution to say that it is "bound" to these redactions because Judge

7

Garaufis signed a protective order submitted to him by the very same prosecution team. Such reliance on Judge Garaufis' Order should be rejected out of hand as the product of the prosecution efforts to conceal these relevant facts. See Exhibit "A", Docket Item # 620, Prosecution Response letter at 3.

17. We could belabor this motion with numerous other examples of how the prosecution's resistance to discovery has severely hampered Mr. Cefalu's ability to adequately prepare for trial – which is only six weeks away -- and a trial date we pledge to keep. However we chose to spare the Court a lengthy litany, and instead offer an example from which the Court—and perhaps the prosecution—can appreciate the extreme difficulties we are encountering in the discovery process.

18. We trust that the filing of this motion will give the prosecution reason to reconsider its position by the May 8, 2008 hearing date, or risk the consequences of a preclusion order or whatever other relief the Court may deem appropriate to ensure Mr. Cefalu's right to a fair trial.

WHEREFORE, defendant DOMENICO CEFALU requests (a) An Order precluding the Government from offering into evidence any document that has not been made available to the defendant Domenico Cefalu on or before May 8, 2008; and (b) For such other and further relief as the Court deems just and proper.

Dated: April 24, 2008
       Uniondale, NY

_____
JOSEPH W. RYAN, JR.
Attorney for Defendant
Domenico Cefalu
1425 RexCorp Plaza
Uniondale, NY 11566
(516) 663-6515

cc: All Counsel (by ECF)

8