1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2
- - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA     :      CR-08-0076 (JBW)
4
    -against-                       U.S. Courthouse
5                            :      Brooklyn, New York
DOMENICO CEFALU, JOHN D'AMICO,
6  LOUIS FILIPPELLI,
VINCENT PACELLI &
7  AUGUSTUS SCLAFANI,

8         DEFENDANTS.         :
                                    May 8, 2008
9  - - - - - - - - - - - - - - X    10:00 o'clock a.m.

10

11        TRANSCRIPT OF STATUS CONFERENCE AND BAIL HEARING
          BEFORE THE HONORABLE JACK B. WEINSTEIN
12        UNITED STATES DISTRICT JUDGE

13

14

15  APPEARANCES:

16  For the Government:        BENTON J. CAMPBELL
                               United States Attorney
17                             147 Pierrepont Street
                               Brooklyn, New York  11201
18                             BY:  JOSEPH LIPTON
                                    EVAN NORRIS
19                                  DANIEL BROWNELL
                                    ROGER BURLINGAME
20                             Assistants U.S. Attorney

21

22

23  For the Defendant:         JOSEPH RYAN, ESQ.
                               AMIT SANDHI
24                             For Deft Cefalu

25                             ELIZABETH MACEDONIO, ESQ.
                               For Deft D'Amico

SS      OCR      CM      CRR      CSR

ALAN FUTERFAS, ESQ.
For Deft Filippelli

MARGARET SHANLEY, ESQ.
For Deft Pacelli

ERIC FRANZ, ESQ.
For Deft Sclafani

Court Reporter:          SHELDON SILVERMAN
                         Official Court Reporter
                         225 Cadman Plaza East
                         Brooklyn, New York 11201
                         (718) 613-2537

Proceedings recorded by mechanical stenography. Transcript
Produced By Computer Aided Transcription.

SS      OCR      CM      CRR      CSR

3

1        THE CLERK:  United States versus Cefalu, et al.

2        THE COURT:   Good morning.

3        The trial for group A is scheduled now for June 9th,

4   five defendants, Domenico Cefalu, John D'Amico, Louis

5   Filippelli, Vincent Pacelli and Augustus Sclafani.  Good

6   morning, everyone.

7        These are the only defendants before us on this

8   motion, correct?

9        MR. LIPTON:   Yes, Judge.  This was the status

10  conference scheduled at the last appearance.

11       THE COURT:  The first motion we'll hear is

12  Mr. Cefalu's motion to preclude the government from offering

13  evidence of any document not made available to the defendant

14  on or before May 8th, 2008, correct?

15       MR. RYAN:  That's correct, your Honor.  The purpose

16  of that motion is to give some teeth to your Honor's orders of

17  March 14th, directions of April 9th and to allow us to be in

18  shape for the June 9th trial.

19       THE COURT:   I'll be happy to hear you.

20       MR. RYAN:   One of the particular items that we are

21  complaining about, apart from preclusion, is a body of wiretap

22  evidence, a bug on a car that Mr. Cefalu is riding in with his

23  first cousin.

24       We have been given more than 500 hours of tapes in

25  this case, but nothing from the bugged vehicle.  In the

SS     OCR     CM     CRR     CSR

4

1    500 hours of tapes --

2         THE COURT:   He was in the car at all times?

3         MR. RYAN:   He was in the car.  At all times, no, he

4    was there when the investigators were watching him.

5         THE COURT:   Are you seeking the tapes of the period

6    when he was in the car?

7         MR. RYAN:   Yes.

8         THE COURT:   As well as when he was not in the car,

9    or only when he was in the car?

10        MR. RYAN:   My understanding is that the bug was on

11   the car and that's what the focus of my demand is; that we

12   want the recordings of the bug in the car.  If there are any

13   recordings, of course of Mr. Cefalu --

14        THE COURT:  Whose car?

15        MR. RYAN:  Domenico Cefalu.  They were riding around

16   in June 1st --

17        THE COURT: Excuse me.  Why are you entitled to the

18   recordings when your client was not in the car?

19        MR. RYAN:   I'm not asking when he was not in the

20   car.

21        THE COURT:   That's what I'm inquiring about.

22        MR. RYAN:   Right.

23        THE COURT:   You just want to be given what was

24   recorded when he was in the car?

25        MR. RYAN:   Precisely.

1          THE COURT:   The government has refused to give you

2    those recordings?

3          MR. RYAN:   Precisely.   I was given a disk.   I defy

4    anyone to hear any conversations on the disk I was given.

5          THE COURT:   Let's find out.   Why aren't you giving

6    him the conversations while he was in the car?

7          MR. LIPTON:   We've given defense every conversation

8    of his client in that investigation, while he was in the car

9    or otherwise.

10          THE COURT:   Does that include the period when he

11    was in the car but he wasn't talking?

12          MR. LIPTON:   I don't know that, your Honor.   I

13    think if he would be in the car we would know he's talking.   I

14    would say probably no, but I will find out and I can get back

15    to your Honor on that issue.

16          THE COURT:   Do you have a recording that's more

17    audible than the one counsel finds difficult to understand?

18          MR. LIPTON:   No, I don't think we do, your Honor.

19          THE COURT:   You have the same difficulty?

20          MR. LIPTON:   Yes, we've tried to do different

21    things.   I think we have made attempts to try to enhance a

22    portion of that tape, not the entire tape.

23          THE COURT:   Have you furnished the enhancement?

24          MR. LIPTON:   I think we do have an enhancement.

25    It's for a short segment of a conversation.

6

1              THE COURT:   Have you transcribed any of it?

2              MR. LIPTON:   We're transcribing some of it and this

3       one small portion is transcribed.

4              THE COURT:   Turn over to defense counsel whatever

5       you have recorded during the period when he was in the car,

6       whether he was conversing or not.  Turn over the enhancements

7       as they become available.  Turn over whatever transcripts you

8       have as they become available, the understanding being that

9       those are transcripts in process and defense counsel will not

10      argue to the jury that there are differences between the

11      transcripts offered and the first group, is that understood?

12             MR. RYAN:   Clear.

13             THE COURT:   Your next problem?

14             MR. RYAN:   In addition to the recording, there are

15      contemporaneous records made by the monitoring agents of these

16      conversations with Mr. Domenico Cefalu.

17             THE COURT:   That's what he's giving you, the

18      recordings, as I understand it.

19             MR. RYAN:   In addition to the recordings, they

20      keep logs, they monitor because they're obligated under the

21      order to make summaries of the conversations.

22             THE COURT:   What advantage will that give you?

23             MR. RYAN:   The hearing officer that's monitoring

24      hears the conversation directly.

25             THE COURT:   I see.

7

1          MR. RYAN:  I ask for the logs, summaries of records
2   contemporaneous with the recordings.
3          THE COURT:  Why can't you give him that?
4          MR. LIPTON:  We have.  It's on the disk.  He has
5   everything.
6          THE COURT:  Make sure he gets it in a way he can
7   understand it.
8          MR. LIPTON:  If he has any questions or problems,
9   they're on there, you click on it, it comes up, summaries from
10  the bug.
11         THE COURT:  Don't you have it in writing?
12         MR. LIPTON:  They're on there.
13         THE COURT:  Didn't they make a written log?
14         MR. LIPTON:  They did.  It's on the CD, all on
15  recording which he has been provided.
16         MR. RYAN:  I must plead guilty to technological
17  incompetence.  When I talk to the government I'm unaware of
18  any disks like that.
19         THE COURT:  They'll give it to you.
20         What else?
21         MR. RYAN:  The other item is the wiretap
22  applications that resulted in the bug and cell phone calls
23  during this period of the investigation.  They're
24  investigating Mr. Cefalu because he was suspected of running a
25  sports betting gambling operation.

8

1      We were given redacted applications.  I'm holding
2  one up in my hand, Judge, submitted as an exhibit, wholesale
3  redaction.

4      THE COURT:   These are the applications?

5      MR. RYAN:   Yes.  Let me explain that.  The
6  redactions are material to our pretrial preparation.

7      For example, in the application subsequently made to
8  when the bug was on the car, they quote a dialogue.  This
9  dialogue, the officers tell the judge of the Supreme Court of
10 New York that Mr. Cefalu admitted that he was the underboss.
11 When and where this conversation took place is redacted.  Who
12 was present?  What facility was it in, things of that nature.
13 So, the redactions are material for us to conduct our
14 investigation because we submit that this is a distorted
15 transcription of a recording that we can't hear and have no
16 transcript of.  The redacted information will give us the full
17 circumstances under which this particular conversation took
18 place.  That's why we ask your Honor to unredact them and
19 allow us to have the full panoply of the orders and the
20 applications upon which they were based in order for us to get
21 into this major issue as to whether or not Mr. Cefalu admitted
22 that he was the underboss of the Gambino crime family.

23     THE COURT:   As I understand it, you're not seeking
24 that in order to suppress?

25     MR. RYAN:   No.

SS      OCR      CM      CRR      CSR

1              THE COURT:    What's the answer?

2              MR. LIPTON:    We have redacted certain portions of

3    the paperwork related to the eavesdropping or wiretaps.   In

4    doing so, we made an application to Judge Garaufis before this

5    case was assigned to your Honor.   In that application, without

6    going into the particulars, we sought protection for a number

7    of reasons, including there was an ongoing investigation; that

8    there were --

9              THE COURT:    Is that investigation ongoing still?

10             MR. LIPTON:    Yes.

11             THE COURT:    With respect to other defendants?

12             MR. LIPTON:    With respect to not other defendants,

13   other subjects or targets not in this case.

14             That investigation was not part of the investigation

15   that led to the indictment of the defendants in this case.   It

16   was not anything used in any of the detention memoranda.   We

17   have turned over everything that relates to this defendant,

18   Mr. Cefalu, and it's the government's position the portions

19   that have been redacted, other stuff that has not been

20   disclosed is not Rule 16 discovery, does not relate to the

21   charges.   We've provided every statement, every recording

22   Mr. Cefalu is on and the redacted portions of the paperwork

23   relate to issues that were disclosed, the ongoing nature of

24   the investigation, confidential source information and it's

25   the government's position, and Judge Garaufis agreed it would

1 | compromise that ongoing investigation, put individuals who are
2 | providing information, their safety in jeopardy.
3 | THE COURT: Did Judge Garaufis see the unredacted
4 | version in making this decision?
5 | MR. LIPTON: He did not. It was provided to him.
6 | Your Honor, it was made available. We did not actually
7 | physically bring it over to him, but it was available if he
8 | wanted it. We made that available.
9 | THE COURT: Provide me with the redacted and
10 | unredacted. I'll look at it in chambers and see if I want you
11 | to redact -- unredact -- anything that is redacted. Please
12 | do that at your earliest convenience, please.
13 | What else?
14 | MR. RYAN: That's it, your Honor. I would ask you
15 | to seriously consider any applications we may make after today
16 | concerning discovery material we're going to be hit with.
17 | THE COURT: I always consider all your applications
18 | seriously because I know you make them seriously.
19 | MR. RYAN: I will.
20 | THE COURT: And if you make them, I will consider
21 | them.
22 | MR. RYAN: Thank you very much, Judge.
23 | THE COURT: Thank you.
24 | Is there any other defendant who wishes to make an
25 | application?

1            (No response.)

2            THE COURT:    Any application by the government?

3            MR. LIPTON:    I believe there are some applications.

4    I don't know if it was specific to discovery, but I think it's

5    probably better left to defense counsel to describe to your

6    Honor the situation we're in a month out from trial, but after

7    they make those applications --

8            THE COURT:    None of them are rising.   I assume they

9    have nothing they want to bring to my attention.

10           MR. FRANZ:    Eric Franz on behalf of Mr. Sclafani.

11   My application is basically continuation of the application I

12   made before the court.

13           THE COURT:    Which is?

14           MR. FRANZ:    Adjournment of the trial date currently

15   scheduled for June 9th.

16           THE COURT:    Denied.

17           MR. FRANZ:    Understood.   I want to make my record

18   so the court can understand that there's over 500 hours of

19   tapes here made principally by a gentleman by the name of

20   Vallaro.   To effectively prepare for trial, it's not just

21   identifying those portions of the tapes --

22           THE COURT:    Are you retained or appointed?

23           MR. FRANZ:    Retained.

24           THE COURT:    Then get yourself an assistant.

25           MR. FRANZ:    Your Honor, I have an assistant.

SS     OCR     CM     CRR     CSR

1   Unfortunately, as I told the court the last time when I
2   indicated in a letter beforehand, I'm commencing a three-week
3   trial 11 days from now.  That trial is going to take me some
4   time into the beginning of June.

5            THE COURT:   I'm not going to adjourn the trial.
6   I've got too many defense counsel in a case that requires
7   almost all available defense counsel in this district.  If I
8   start adjourning this case, I can't juggle it to satisfy
9   anybody.  So, you will have to adjust yourself to the schedule
10  of other defense counsel and the court.  Nothing new has been
11  brought to my attention.  Your motion is denied.

12            Is there anybody else?

13           MR. FUTERFAS:   Yes, your Honor.  I understand your
14  Honor's practical concerns with all defense counsel, the
15  number of defendants that have been brought in a single case.
16  One of the things that a number of defense counsel are doing
17  are spending very significant amounts of time seeing if we can
18  reach a very significant disposition with respect to many of
19  these defendants, many of the defendants.  Whether we will
20  actually achieve the numbers we hope to achieve remains to be
21  seen.

22           However, the practical problem we face is a very
23  significant one.  We've had meeting after meeting at the MDC.
24  When we schedule those meetings, they've been very
25  accommodating, my secretary, for example, will send, say we

1   want 15 people or 18 people to attend, defendants.  The MDC

2   writes back, says no, for this meeting have seven or eight.

3   So, we have seven or eight.  We've had meetings seriatim by

4   different lawyers, some of the lawyers in this room, some of

5   the lawyers not here today, so that over time we reach both

6   defendants on bail and defendants who are not on bail.  It's

7   seven or eight at a time per meeting.

8          We have had a meeting with almost 25 defense counsel

9   and getting 25 defense counsel at one meeting at one place at

10  one time is not easy.

11          THE COURT:   You can use the telephone.

12          MR. FUTERFAS:   We do that.  People have different

13  schedules, commitments at different times.

14          THE COURT:   Yes, it is difficult, I understand.

15          MR. FUTERFAS:   The practical issue we have is that

16  I don't know if I have a specific application at this point,

17  but I do want to inform your Honor because of the issues that

18  we're dealing with.  To try to reach such a resolution is

19  absolutely all-encompassing.  There are many defense counsel

20  that have to be contacted.

21          Because some people are in group B, F or G, they

22  don't have trial dates, obviously.  Cases for them are some

23  time away, the trials.  Nonetheless, reaching out to people,

24  getting them involved in the process is something that is

25  taking many, many hours a day.

SS      OCR      CM      CRR      CSR

1        We as defense counsel realistically cannot do both.

2   It's very difficult to try, on the one hand, to resolve a

3   significant portion of the case and on the other hand

4   realistically prepare for trial.  We are trying.  I have not

5   one but two people assisting me, listening to tape recordings,

6   making transcripts.

7        I'm just telling your Honor of a very, very real

8   practical concern.  What we're hoping to do is get a proposal

9   to the government, a mass proposal to the government very

10  early next week.  Depending on how that's received, maybe make

11  an appearance before your Honor towards the end of next week

12  or the early part of the following week where we can report

13  more substantively on where we are.

14       My guess is, your Honor, is that if there is much to

15  this proposal, there's always going to be issues with

16  individual defendants.  One of the difficulties here is that

17  individual defendants in every case are very differently

18  situated.  So, there are going to be situations where there

19  are defendants who A, choose to go to trial; B, just the

20  government and that defendant are not going to agree or going

21  to be far apart.  We anticipate that.

22       We are cautiously optimistic there will be a very

23  significant number with whom we can eventually reach some kind

24  of middle ground.  That process is going to be very time

25  consuming.  Once our mass proposal goes over to the

SS      OCR      CM      CRR      CSR

1  government, they're going to have to look at it.  We expect

2  significant amount of time spent in individual negotiations

3  between individual defense counsel and the government.

4       It will be during that period of time and even up

5  until now very difficult to prepare the case for trial from

6  our perspective, I could imagine the government would feel the

7  same way.  I guess I'm asking your Honor to simply consider A,

8  to schedule an appearance before your Honor maybe later next

9  week or the very beginning of the following week; B, just keep

10  in your Honor's mind the possibility of considering blocking

11  out a period of time, almost creating a hiatus period in which

12  it would be absolutely necessary if such a disposition is to

13  occur for the parties to devote all their resources to doing

14  that.

15       Again, I don't have a specific application, but I

16  did want to alert your Honor what's going on so you understand

17  at least another backdrop of our practical considerations on

18  this subject.

19       THE COURT:   I appreciate your statement.  I've

20  already expressed my view that we're fortunate in having such

21  experienced and responsible counsel on both sides.  I'll

22  certainly keep what you said in mind.

23       Anybody else wish to be heard?

24       MS. MACEDONIO:   Elizabeth Macedonio for

25  Mr. D'Amico.  I join in Mr. Franz's application.  You know the

16

1   facts.   Discovery is overwhelming.   I'm not going to be

2   prepared on June 9th.   We are engaged in active plea

3   negotiations.

4          In addition to that, I have a bail application to

5   make this morning.   I'm not sure if your Honor wants to hear

6   that independently, just with Mr. D'Amico, if you would like

7   to go forward with everyone here.

8          THE COURT:   I'll hear it.   I don't need anybody

9   else to hear your application.   After we finish with everybody

10  else, you can remain with your client.   If the marshals can

11  handle that, we'll hear it.   Can you do that?

12         THE MARSHAL:   Yes, we can.

13         MR. FRANZ:   I have one brief application at the

14  conclusion regarding a travel request for Mr. Sclafani.

15         THE COURT:   I'll hear it now.

16         MR. FRANZ:   You had granted a request for him to go

17  to Florida with his family May 14th to the 28th.   They were

18  going to get tickets for that time.   He's asked me to modify

19  that, follow up in a letter if necessary, May 21st to

20  June 4th, moving it over a week.   I conferred with the

21  government.   They don't object.

22         THE COURT:   Granted.   Submit an order.

23         What else?

24         MR. LIPTON:   I don't know if your Honor would like

25  to set down a status conference date for maybe ten days out.

1    It does make sense to the government.  We have been

2    negotiating in good faith with defense counsel.  There is what

3    appears to be a large number of individuals who in principal

4    are interested in negotiating.  Without getting too deep into

5    it, we're working on that.

6           The practical realities Mr. Futerfas raised are

7    indeed present and we're continuing to prepare for trial.  We

8    understand your Honor needs and wants the case to go forward

9    if there's going to be trials; that we will be ready.  In an

10   effort to try to accommodate all the negotiations, also to

11   prepare for trial, if we had that status conference date --

12          THE COURT:   You want a date set now?  What do you

13   want, what date?

14          MR. LIPTON:   We can do it the 20th?

15          MR. FRANZ:   As I indicated, I would suggest we do

16   it the Friday before.  That's the last time I'm available.

17          THE COURT:   You may not be sufficiently advanced in

18   your discussions.  I'm available any time.

19          MR. LIPTON:   I would say, I think, your Honor,

20   May 20th, would give us probably a week from the time we

21   assume we're going to get a proposal from defense counsel and

22   we'll try to turn that around and discuss that with them as

23   soon as possible.

24          THE COURT:   May 20th.

25          Jury selection is scheduled for June 9th, right?

1        THE CLERK:  I believe it is.

2        MR. LIPTON:   We will be making an application for

3    an anonymous jury.

4        THE COURT:   You'll have to make it, but I have to

5    be concerned with getting enough jurors in.  That may depend

6    upon how many defendants we're faced with and, therefore, how

7    many challenges I'll permit.

8        When does the notice go out to give us a panel on

9    the 9th?

10        THE CLERK:  Right about now, a month before.

11        THE COURT:   How many are you asking for?

12        THE CLERK:  That's my question to you.

13        THE COURT:   What's their normal call?

14        THE CLERK:  Is it anonymous or is it not?

15        THE COURT:   Assume it's going to be anonymous, tell

16    the Clerk of the Court to put on for call an extra one hundred

17    jurors from what he had planned.  That will get us through.

18        MR. LIPTON:   That's really the issue, your Honor,

19    anonymous jury and also depending on how many individuals we

20    end up with and if we end up with just, for example, one or

21    two --

22        THE COURT:   Unless there's an objection, I think an

23    anonymous jury may be useful here.

24        MR. FUTERFAS:   Very significant objection from the

25    defense.

SS      OCR      CM      CRR      CSR

19

```
1            THE COURT:   Make a formal motion.

2            MR. FUTERFAS:   Sorry?

3            THE COURT:   Make a formal motion.

4            MR. FUTERFAS:   Am I making it or is the government

5    moving?

6            THE COURT:   The government is making a motion for

7    anonymous jury.  They'll make it on papers.

8            MR. FUTERFAS:   Then we'll respond.

9            MR. FRANZ:   I'll then renew my motion for a

10   severance.  Mr. Sclafani is not charged in the racketeering

11   counts, not charged with participating --

12           THE COURT:   Your motion is denied.  I don't see it

13   has anything to do with your motion.

14           MR. FRANZ:   The reason it would, anonymous jury, I

15   submit, is extremely detrimental to the defendant

16   notwithstanding safeguards are put in place.

17           THE COURT:   I'll hear you if the government makes a

18   motion.  I'll have to set time for argument.

19           Anything further?

20           MR. LIPTON:   There were some dates we were going to

21   advise your Honor that key off the trial date in terms of

22   proposed --  proposals -- by the government of getting out

23   3500 material, witness lists, those sorts of things which we

24   had put in our response to Mr. Cefalu's motion.  Because we

25   are continuing these negotiations, we had asked that if the
```

SS      OCR      CM      CRR      CSR

1   trial is going to go forward on June 9th, 2 weeks before that

2   we would have our 404(b) evidence motion in, our anonymous

3   jury motion, 3500 and expert notification and whatever your

4   Honor would like as jury charges from the government.

5           THE COURT:  As of this moment we'll assume the case

6   is going to be tried beginning June 9th.  If you have any

7   motions that are appropriate, considering that date, make them

8   normally.  They are not before me at this moment?

9           MR. LIPTON:  That's correct.

10          THE COURT:  The only thing open is the bail

11  application, correct?  I want to thank you very much.

12          MR. FUTERFAS:  Can I inquire through your Honor

13  what is the size?  I don't want the defense to remain silent

14  on dates for 3500 material, but I would like to inquire

15  through your Honor are we talking about five boxes of

16  material?  I don't know how many witnesses they're going to

17  call.  I don't know how many times those individuals have

18  testified.  I don't know what the size of this material is.

19          THE COURT:  Do you have any idea?

20          MR. LIPTON:  There are some witnesses that have

21  testified before that have --

22          THE COURT:  I assume the government is looking to

23  move the case forwards.

24          MR. LIPTON:  Yes.

25          THE COURT:  Don't drag your heels.  Give it to them

1    as soon as you have it available on a rolling basis.

2           MR. LIPTON:   Yes, Judge.  I think two weeks will be

3    more than enough.  There are individuals who have testified

4    before.  I don't think that's going to be burdensome.

5           THE COURT:   Bear in mind they have a practical

6    application they could make if you delay, so move forward.

7           Thank you very much.

8           THE CLERK:  May 20th at 11:30.

9           MR. LIPTON:   There was one issue before Mr. Cefalu

10   leaves, the government intends to be superseding the

11   indictment as to Mr. D'Amico and Mr. Cefalu on a couple of

12   items, either one or more and we're hoping to have that next

13   week.

14          THE COURT:   I can't do anything about that issue.

15   They may have a basis for adjournment.

16          MR. RYAN:   This is the first time I'm notified of

17   that.

18          MR. LIPTON:   That's our intention.  I know it's not

19   before your Honor right now.

20          THE COURT:   I'll deal with it when it comes up.

21          MR. RYAN:   We will, too.  Thank you.

22          MS. MACEDONIO:   This is my application.

23          THE COURT:   On behalf of?

24          MS. MACEDONIO:   Mr. D'Amico.  I'm asking for your

25   Honor to reconsider Judge Matsumoto's order of detention

1    against Mr. D'Amico.  She found that he was a risk of flight

2    and a danger to the community.

3          I submitted a lengthy memorandum in this regard.  I

4    trust the court has received it.

5          THE COURT:   Yes.

6          (Pause.)

7          THE COURT:   Make your oral statement, please.

8          MS. MACEDONIO:   Judge, I think the government has

9    failed to prove, carried their burden in both respects,

10   Mr. D'Amico is a risk of flight or danger to the community.

11   I'm going to start with risk of flight.

12         Everything about Mr. D'Amico's past indicates that

13   he has and will continue to return to court as directed by

14   your Honor.  His history is nothing short of remarkable.

15         If in the 1980s there was a federal case brought in

16   New Jersey.  On that case he appeared every time he was

17   supposed to.  He was released on his own recognizance.  The

18   case was ultimately dismissed.

19         Thereafter, in the Southern District of New York,

20   Mr. D'Amico became aware that charges were going to be brought

21   against him.  Not only did he self-surrender, but days

22   preceding his arrest, he rented a hotel room in White Plains

23   to facilitate his arrest and surrendered voluntarily to the

24   FBI in White Plains.

25         In the instant case, he heard about the arrest on

1   the news and made arrangements that very day to

2   self-surrender.  He's never had an issue with a warrant being

3   authorized by any judge for his nonappearance.  He's a 71-year

4   old lifelong resident of the state.

5          He has a home in New Jersey where his wife lives,

6   married many years, raised three children.  There's nothing

7   about his past that indicates that he's not going to return to

8   court.  Indeed, every time he's been directed to, he's done

9   so.

10         I think the idea that he would in this case

11  self-surrender, then flee is nothing short of ridiculous.

12         The government alleges Mr. D'Amico is facing a

13  significant period of time and that may cause him to flee.

14  That causes me to go into a description of the evidence

15  against him in this case.

16         THE COURT:   Your papers indicate he's a sales

17  representative for a water distributor.

18         MS. MACEDONIO:   That's correct, had that job for

19  several years, had it while he was on supervised release in

20  the Southern District of New York.  He continues to be

21  employed.  If he's released he will go right back to work.  He

22  takes the train to work.  He has no car.

23         THE COURT:   Does he pay taxes?

24         MS. MACEDONIO:   He most certainly does, your Honor.

25  He's had the job for over 17 years.

SS      OCR      CM      CRR      CSR

1          THE COURT:   Is his wife employed?

2          MS. MACEDONIO:   She is employed at a local school,

3    monitors the cafeteria.

4          THE COURT:   What are their sources of income, her

5    cafeteria income and his employment with the water company?

6          MS. MACEDONIO:   And his social security and her

7    social security.

8          THE COURT:   They live alone, just the two of them

9    in the house now?

10         MS. MACEDONIO:   Yes.   The house is paid for.

11         THE COURT:   Has no mortgage?

12         MS. MACEDONIO:   No mortgage.

13         THE COURT:   He does have some health problems?

14         MS. MACEDONIO:   Significant health problems.   He

15   has diabetes, not receiving medication he needs at the Queens

16   facility.   He has a lesion on his pancreas.   Obviously if that

17   develops into something else, it's fatal, there's no other way

18   to describe it.

19         We've been unable to make certain he receives the

20   MRI he needs, long overdue for that.   He's got other

21   diabetic-related issues with respect to high blood pressure,

22   has to take medication to monitor his heart.   He's getting

23   some of the medications but not all that his doctor has

24   prescribed, not nearly in the doses required.

25         THE COURT:   What are your proposals?

1          MS. MACEDONIO:   I have a package of three

2    properties totaling about $2 million.

3          THE COURT:   $2 million net assets?

4          MS. MACEDONIO:   Yes, secured bond of $2 million.  I

5    would like for Mr. D'Amico to be able to go back to work.

6          THE COURT:   What else?

7          MS. MACEDONIO:   He will submit to regular pretrial

8    supervision.  He doesn't have a passport nor or applied for

9    one.

10         THE COURT:   And no application.

11         House arrest while he's not working?

12         MS. MACEDONIO:   That's fine.

13         THE COURT:   Working or at the doctor or with the

14   lawyer.

15         MS. MACEDONIO:   That's correct.

16         THE COURT:  No cell phone.  Does he use a cell phone

17   at work?

18         THE DEFENDANT:  Yes.

19         THE COURT:   Who supplies the cell phone?

20         THE DEFENDANT:  The company.

21         THE COURT:   No cell phone to go home, just while

22   you're at work.  You're not to call anybody except on

23   business; do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:   How many phones do you have in the

26

1   house?

2           THE DEFENDANT:  One.

3           THE COURT:  One land line subject to tapping by the

4   government; subject to house inspection by the government?

5           MS. MACEDONIO:  That's fine, Judge.

6           THE COURT:  No visitors except relatives by

7   marriage or blood.

8           MR. BURLINGAME:  We're going to object.

9           MS. MACEDONIO:  That's fine, your Honor.

10          THE COURT:  Anything else you want to propose?

11  Ankle bracelet that he pays for?

12          MS. MACEDONIO:  That's fine, your Honor; thank you.

13          MR. BURLINGAME:  Judge, before we get to the

14  dangerousness issue, the government has evidence the

15  defendant's job at Big Geyser is a sham.  There's a recorded

16  conversation in which he says he pays the company $700 in

17  order for him to receive his salary of $700 a week.  There's a

18  witness who will testify to that.  That should not be the

19  basis for him to get out of jail to continue to work at a job

20  which is just a front.

21          THE COURT:  Have you seen that?

22          MS. MACEDONIO:  I have not.  This is the first I'm

23  hearing of it.

24          THE COURT:  Do you have a copy of that transcript?

25          MR. BURLINGAME:  I have --  I can provide a copy of

1   the transcript.

2           THE COURT:    Provide a copy to counsel and we'll

3   adjourn the hearing while counsel considers it.   That would be

4   a factor.

5           MR. BURLINGAME:    I would like to argue as to

6   dangerousness as I'm sure your Honor is familiar with the

7   Second Circuit authority that frequently has held people who

8   have been alleged to be acting bosses of organized crime

9   families at liberty presents a risk to the public, not only

10  from their own activity, but the subordinates who they are

11  supervising.  Obviously the question on your Honor's mind is

12  what is the government's evidence that he is indeed the acting

13  boss of the Gambino family.

14          THE COURT:    You'll have to bring it forward.  We'll

15  adjourn this until early next week if that's convenient?

16          MR. BURLINGAME:    I'm actually going to be traveling

17  the beginning of next week.

18          THE COURT:    Can you give that information

19  immediately?  Today is Thursday.  Do it by Friday, tomorrow.

20  No, tomorrow is impossible for me.  When do you start your

21  travel?

22          MR. BURLINGAME:    I'm away from tomorrow through --

23  I get back Wednesday of next week.  I'm in the grand jury on

24  Thursday.

25          THE COURT:    Are you available Wednesday?

SS      OCR      CM      CRR      CSR

1          MR. BURLINGAME:   I could be available probably late

2    in the afternoon Wednesday.

3          THE COURT:   Put it on for 3:00 o'clock next

4    Wednesday, please.

5          MR. BURLINGAME:   I'm sorry, what's Wednesday's

6    date?

7          THE CLERK:  The 14th.

8          THE COURT:   3:00 o'clock on Wednesday the 14th.

9    Furnish defense counsel with the materials you're relying on

10   forthwith so she can deal with them, including his

11   relationship with the alleged Mafia gang as an official.

12         MR. BURLINGAME:   It's both a mix of cooperating

13   witness testimony and recorded conversations concerning his

14   status as the acting boss.

15         THE COURT:   The recorded conversations.

16         MR. BURLINGAME:   They have already been turned

17   over, I believe.

18         THE COURT:   Give defense counsel a summary of what

19   else.  I don't want to hear the witnesses.

20         MR. BURLINGAME:   I'll provide a summary of the tape

21   recorded conversations and summary of what the witness

22   testimony would be.

23         THE COURT:   Very well.  I'll hear you on Wednesday.

24         MR. BURLINGAME:   Thank you.

25         MS. MACEDONIO:   Thank you.

1           THE COURT:   Are you being well treated?

2           THE DEFENDANT:   No.

3           THE COURT:   What's the problem?

4           THE DEFENDANT:   I have lesions on my pancreas, six

5    months behind.  I was getting MRI's for my pancreas.  In

6    January I was due.  February I didn't do it because I got

7    arrested and I was supposed to do it every three months

8    according to Dr. Bloomgard (ph) from Sloane Kettering.  I

9    haven't done it in six months.  My medication at the facility

10   is minusing me three different medications that go along with

11   my diabetes and my cholesterol.  They're giving me whatever

12   they give me, but it's not what I was getting.  I gave them a

13   list from my doctor what I'm supposed to get.

14          THE COURT:   How do they handle when he needs an

15   MRI?  They take him to the facility that has the MRI

16   equipment?

17          MR. LIPTON:   I will have to inquire.

18          THE COURT:   See what you can do for him.  If

19   there's a possible cancer there, we don't want it to develop

20   because he's not getting his appropriate treatment and

21   examinations.

22          MS. MACEDONIO:   I've had discussions with the

23   warden at the Queens facility with regard to that.

24   Unfortunately, I think this just comes down to economics.

25   They had submitted that Mr. D'Amico was due for an MRI, went

1  up to corporate.  Corporate denied it.

2          THE COURT:    Corporate?

3          MS. MACEDONIO:    Apparently the group which is the

4  Queens facility is run by a corporation.  They've denied my

5  client proper medical treatment.  It has to be addressed.  A

6  lesion on your pancreas is deadly.  The MRI has to be done and

7  it has to be done now.  We need to know what's going on.

8          THE COURT:    Wednesday, supply a letter from the

9  doctor indicating that it is exigent, if that is the case.

10 You can subpoena, if you wish, an official of the institution

11 to explain why, if his doctor says he must have it, they're

12 not giving it to him.

13         MS. MACEDONIO:    I have submitted letters with

14 regard to Mr. D'Amico's medical situation.  They are attached

15 to my bail memorandum.  If you need something further, I'll be

16 happy to submit.

17         THE COURT:    You'll have to convince me so use your

18 subpoena powers.  You have the date and time.

19         MR. LIPTON:    I don't think that will be necessary.

20 If we need an official here, I'll make sure to communicate

21 with the warden, let him know your Honor is going to have this

22 hearing and the issue of Mr. D'Amico's medical situation is

23 going to be discussed.  If defense counsel calls us, we'll

24 intercede, do what we can.  If it turns out the facility or

25 BOP is not willing to do something, I'm sure it will be

1  brought before your Honor and the appropriate steps will be

2  taken.

3           THE COURT:    Thank you.

4           (Matter concludes.)