1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -     X

UNITED STATES OF AMERICA,     :     CR 08-076

                              :

      -against-               :
                                    United States Courthouse
                                    Brooklyn, New York

JOSEPH AGATE, et al.,         :

                                    October 6, 2008
            Defendants.       :     9:30 o'clock a.m.

- - - - - - - - - - - -     X


                  TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE JACK B. WEINSTEIN
            UNITED STATES SENIOR JUDGE


APPEARANCES:


For the Government:          BENTON J. CAMPBELL
                             United States Attorney
                             BY: ROGER BURLINGAME
                                 DANIEL BROWNELL
                                 EVAN NORRIS
                             Assistant United States Attorneys
                                 271 Cadman Plaza East
                             Brooklyn, New York


For the Defendants:          Partial List of Attorneys Present:


                             JAMES R. FROCCARO, ESQ.
                             Attorney for R. Epifania


                             MARK AGNIFILO, ESQ.
                             Attorney for M. King


                 GR     OCR     CM     CRR     CSR

1   Defense Attorneys Continued:

2

3                          GERALD SHARGEL, ESQ.
                           ROSS KRAMER, ESQ.
4                          Attorneys for A. Scibelli

5                          ELLEN RESNICK, ESQ.
                           Attorney for L. Filippelli
6

7                          SETH GINSBERG, ESQ.
                           Attorney for W. Scotto
8

9                          DOMINIC AMOROSO, ESQ.
                           Attorney for G. Cracolici
10

11                         ROBERT M. BEECHER, ESQ.
                           Attorney for Mosca
12

13                         JOSEPH R. BENFANTE, ESQ.
                           Attorney for J. Scopo
14

15                         THOMAS J. CAPPELLO, ESQ.
                           Attorney for J. Agate
16

17                         SARITA KEDIA, ESQ.
                           Attorney for J. Corozzo
18                            and M. Cassarino

19                         SUSAN G. KELLMAN, ESQ.
20                         Attorney for L. DiMaria

21                         ELIZABETH E. MACEDONIO, ESQ.
22                         Attorney for J. D'Amico

23                         JOSEPH W. RYAN, JR., ESQ.
24                         Attorney for D. Cefalu

25

GR      OCR      CM      CRR      CSR

3

1  Defense Attorneys Continued:

2
                              BETTINA SCHEIN, ESQ.
3                             Attorney for T. Polakoff

4
                              MARGARET M. SHALLEY, ESQ.
5                             Attorney for V. Pacelli

6
   Court Reporter:           Gene Rudolph
7                             225 Cadman Plaza East
                              Brooklyn, New York
8                             (718) 613-2538

9
   Proceedings recorded by mechanical stenography, transcript
10 produced by computer-aided transcription.

11

12                              * * * * *

13

14

15         THE CLERK:  United States versus Agate, et al,

16 criminal cause for hearing.

17         THE COURT:  I have received a number of letters

18 seeking waivers of the defendant's presence.  I have approved

19 them all.

20         Is there anybody here without a client who hasn't

21 submitted a waiver?

22         MR. FROCCARO:  During his sentencing proceedings you

23 indicated my client didn't have to appear.

24         THE COURT:  Is he waiving?

25         MR. FROCCARO:  Yes.

4

1          THE COURT:  Who else?

2          Granted.

3          Who else?

4          MR. AGNIFILO:  I haven't submitted a waiver.

5    Mr. King is not here yet.  I am waiving his appearance.

6          THE COURT:  Granted.

7          MR. AMOROSO:  My name is Amoroso.  I represent

8    Cracolici, who is here, but the government is not seeking

9    restitution.

10         I am seeking permission to be excused.

11         THE COURT:  The government is not seeking

12   restitution against him?

13         MR. BURLINGAME:  That is correct, Judge.

14         He pled guilty to a count in which there were no

15   losses.

16         THE COURT:  Excused.

17         MR. AMOROSO:  Thank you.

18         MS. KELLMAN:  Susan Kellman.

19         Good morning.

20         My client did not waive his appearance, but I will

21   waive it.  He doesn't appear to have been produced.

22         THE COURT:  Waiver accepted.

23         MR. GINSBERG:  Your Honor, for Mr. Scotto.  I did

24   not waive his appearance but he has not been produced so I

25   will waive it so we can proceed.

GR     OCR     CM     CRR     CSR

5

1          THE COURT:  Waiver accepted.

2          Anybody else?

3          There seem to me to be two central issues here.  I

4  have the government's proposed order revised as of

5  October 5th.

6          It will be marked as Court Exhibit 1.

7          (So marked.)

8          We have the Department of Justice letter of

9  October 4th, Court Exhibit 2.

10          October 3rd letter of Brafman, Court Exhibit 3.

11          October 3rd letter of Ryan, Court Exhibit 4.

12          October 3rd letter of Cappello, Court Exhibit 5.

13          October 3rd letter of Fasulo, Court Exhibit 6.

14          October 3rd letter of Protass, Court Exhibit 7.

15          October 3rd letter of White, Court Exhibit 8.

16          October 3rd letter of Shargel, Court Exhibit 9.

17          October 4th letter of Kedia, Court Exhibit 10.

18          October 5th letter of Ginsberg, Court Exhibit 11.

19          October 3rd letter of Benfante, Court Exhibit 12.

20          October 2nd letter of Futerfas, Court Exhibit 13.

21          October 2nd letter of Orden, Court Exhibit 14.

22          October 2nd letter of Welsh, Court Exhibit 15.

23          October 2nd letter of Beecher, Court Exhibit 16.

24          October 2nd letter of Kedia, Court Exhibit 17.

25          October 2nd letter of Ginsberg, Court Exhibit 18.

6

1        October 2nd letter of DiBenedetto, Court Exhibit 19.

2        September 25th letter of Sheppard, Court Exhibit 20.

3        October 1st letter of Froccaro, Court Exhibit 21.

4        October 2nd letter and brief of Shargel, Court

5   Exhibit 22.

6        October 5th letter of Kellman, Court Exhibit 23.

7        October 2nd letter of Franz, Court Exhibit 24.

8        October 3rd letter of Tacopina, Court Exhibit 25.

9        Those are all the documents.

10        And October 3rd letter of Schein, Court Exhibit 26.

11        October 3rd letter of Cappello, Court Exhibit 27.

12        October 4th letter of Kedia, Court Exhibit 28.

13        October 2nd letter of Kedia, Court Exhibit 29.

14        Some of these may be repetitive.

15        There are two central problems, as I began to say.

16   One, the Local 325 victim, the government contends that there

17   is a restitution obligation of 37,512 jointly and severally

18   against Agate, Dragonetti, Scopo and Scotto.

19        You have a request from the union for that sum,

20   correct?

21        MR. BURLINGAME:  That's -- we have the request from

22   the union for restitution.  That's what we came up as the

23   appropriate figure.

24        THE COURT:  Is there any objection to an order of

25   that amount?

1          MR. CAPPELLO: Thomas Cappello.

2          THE COURT:  For?

3          MR. CAPPELLO:  Joseph Agate.

4          THE COURT:  Yes?

5          MR. CAPPELLO:  Your Honor, I submitted two letters

6    on Friday.  Initially, this matter was resolved at Mr. Agate's

7    sentence.

8          I indicated in my letter, the government conceded at

9    sentencing that they were not pursuing any amount of

10   restitution.  Initially, the PSR indicated an amount of

11   restitution in the amount of $2,000 for the union that

12   Mr. Mosca allegedly received as some type of payoff.  That had

13   nothing to do with Mr. Agate.

14         The government also contended that Mr. Agate owed

15   the union an amount for back dues and for purchasing his union

16   book.  I attached to my sentencing memorandum proof of

17   payments, that he paid his union dues up to the date of his

18   arrest in this matter.  From that point he was unemployed.  So

19   he let the payments lapse.

20         I provided proof that he also paid for the union

21   book seven hundred or so bucks, six hundred maybe, and the

22   government agreed that based on that there were no further

23   grounds for restitution.

24         The Probation Department's recent submission, in

25   fact, doesn't include Agate at all in their breakdown of the

1   restitution amounts.  And it wasn't until late Thursday night

2   that I had a conversation with Mr. Burlingame, that I was

3   surprised to find out that now, all of a sudden, they came up

4   with this thirty-seven dollar -- $37,000 amount, apparently

5   based on 83 percent of Mr. Mosca's salary that was prorated

6   over the time of the conspiracy.

7            If Your Honor is inclined to entertain the

8   application, I would ask for some time to more adequately

9   respond to the government's position.

10            Basically, this matter was finalized.  I have

11   the -- my copies of the judgments with me.  The defendant

12   actually signed off on it a few days ago when Probation came

13   to his home for his monthly report.  Restitution was found to

14   be not applicable in this matter.

15            Additionally, Your Honor did fine the defendant a

16   $3,600 fine and, notably, waived any interest because of the

17   fact that you found Mr. Agate had no ability to pay.  That

18   fine is spread out over a three-year period.

19            If you wish to hear the merits as to the amount of

20   the -- allegedly owed to the union, I would ask for more time

21   to respond.

22            MR. BURLINGAME:  Your Honor, there was some

23   confusion in the sentencing of Mr. Agate with respect to this

24   issue.  Namely, the government had been -- was remiss in not

25   appropriately assessing the loss, being the loss of Mr. Mosca

1   on the service, which is what was charged in the indictment.

2   And while during sentencing we discussed the potential grounds

3   for restitution as the $2,000 that was paid for

4   the -- allegedly paid for the union book and potential lost

5   funds, upon doing further research to -- in preparation for

6   this hearing, I think -- the government's submission, we

7   realized that we had not appropriately assessed what the

8   actual loss is to the union for this crime.

9           I don't believe, as Your Honor pointed out, we have

10  the authority to waive restitution where it is appropriately

11  due to the victim.  What we have submitted is our best

12  assessment of what the appropriate restitution is for

13  Local 325.

14          THE COURT:  You are not including in this 37,000 the

15  union dues and things like that, are you?

16          MR. BURLINGAME:  That's correct.

17          THE COURT:  You are not including that?

18          MR. BURLINGAME:  That's correct.

19          I consulted --

20          THE COURT:  What is the basis for the 37,000

21  computation?

22          MR. BURLINGAME:  37,000 is the -- what the loss is

23  to the union as the loss of the union official's honest

24  services.  And so what we -- there was a choice between the

25  loss of his services from the point of the crime forward to

1  now or for the duration of the crime.  We chose the shorter

2  period.  So what we have is that his -- is the percentage of

3  his salary during that -- or the percentage of his yearly

4  salary which is covered by that period.

5          THE COURT:  What period?

6          MR. BURLINGAME:  The period during which the

7  conspiracy for illicitly selling the book took place.

8          THE COURT:  What is the percentage?

9          MR. BURLINGAME:  It was 83 percent of his yearly

10 salary.

11         THE COURT:  How did you figure 83 percent?

12         MR. BURLINGAME:  The ten months over which the

13 conspiracy took place as a percentage of 12 months.

14         THE COURT:  So it's total salary for the total

15 period of the conspiracy?

16         MR. BURLINGAME:  Correct.

17         THE COURT:  Agate is a member of the conspiracy, is

18 he not?

19         MR. CAPPELLO:  Judge, he pled guilty to a conspiracy

20 that took place in March of 2006.  But he didn't plead to the

21 entirety, from July or September of 2005.

22         But just to put this in context, in October of 2006,

23 Mr. Agate suffered a stroke.  As a matter of fact, he was told

24 at that time that he might die, or his family was told that he

25 might die.  He was incapacitated.  He was disabled through

1  February or March, or late March of 2006, at which time he

2  thought someone was doing him a favor and will help you get a

3  job.

4         That's what he pled to, that he got a job or

5  received membership in the union without doing an

6  apprenticeship program.

7         He could never have foreseen this alleged loss of

8  $37,000 to the union for Mr. Mosca's deprivation of honest

9  services to the members.  As a matter of fact, I think if the

10 Court took that amount and accepted it, it would mean that

11 Mr. Mosca did nothing for ten months other than deal with this

12 conspiracy.  Presumably, he continued to work.  He continued

13 to keep up with his duties at the union.

14        While Mr. Agate did plead to the conspiracy, when

15 you take the language of what he pled to, his allocution,

16 there is no way that this amount can be tacked on to him, or

17 to his knowledge.

18        THE COURT:  What's the government's view?

19        MR. CAPPELLO:  If I may also point out, Your Honor,

20 I haven't seen anything from the union reporting a loss.  But

21 I do have the government's addendum to the presentence report

22 which I received the date of the sentencing, back in August.

23 The Probation Department reports that Local 325 reported that

24 there is no loss.  I don't know if this is just a guesstimate

25 on the union -- on the government's part.

GR        OCR        CM        CRR        CSR

1          THE COURT:  What is Local 325 seeking?

2          MR. BURLINGAME:  We have just conferred with

3    Local 325.  We know that they are seeking, if -- they want

4    restitution.  We have --

5          THE COURT:  Is this the amount that they want?

6          MR. BURLINGAME:  This is the amount that we after

7    consulting with the case law in which this loss of honest --

8          THE COURT:  What is the union seeking, is what I am

9    asking you.

10         MR. BURLINGAME:  The union has not given us a

11   specific figure that they are seeking.  Obviously, we can

12   consult with the union and get back to Your Honor on that.

13         THE COURT:  He must have been giving some honest

14   services during this period.

15         MR. BURLINGAME:  We were just calculating -- there

16   is case law which we were following in coming up with this

17   calculation which we'd be happy to also supply to the Court.

18         THE COURT:  He must have been giving some services

19   in addition to these illicit services.

20         The matter was set for a hearing this morning.  I

21   expected evidence.

22         MR. BEECHER:  Excuse me, Your Honor.

23         Perhaps I could enlighten the Court.  I don't mean

24   to throw a monkey wrench into things.  I represent Louis

25   Mosca.  The restitution to Louis Mosca is $2,000, not 37,000.

1  So I think the government's position is some --

2  THE COURT:  To Mosca or from?

3  MR. BEECHER:  No, to Mosca.  This is the gentleman

4  that the government is basing their pro rata 83 percent

5  calculation for.

6  THE COURT:  I don't understand what you mean by the

7  restitution to Mosca.

8  MR. BEECHER:  The restitution amount attributed to

9  Mr. Mosca is the $2,000 that was paid to him to deliver the

10  union card to Mr. Agate.  That's all the restitution amount

11  attributed to Mr. Mosca.  We have an issue with that as well.

12  But it is inconsistent with the $37,000 which the

13  government is now saying other defendants owe and, of course,

14  the Court is quite correct, during that ten-month period,

15  Mr. Mosca was working continually.

16  The only allegations in the three counts, the only

17  allegation in the three counts that he is charged with in this

18  indictment concern his dealings with Mr. Agate.  I think it is

19  a bit confusing, but it is pretty clear, and the union,

20  incidentally, as is correctly pointed out, did not request

21  restitution in any amount.  In fact, specifically told

22  Probation, as is reflected by their August 23rd addendum, that

23  they did not suffer damages.

24  I spoke to Cindy Hasner on Friday afternoon before I

25  made my submission.

14

1          THE COURT:  Why didn't you ask the witness to come

2     forward to say that?  This is an evidentiary hearing.  I am

3     not getting any evidence.

4          MR. BEECHER:  Your Honor, on August 23rd, the

5     government through the Probation Department did indicate that

6     the union was not seeking restitution.

7          THE COURT:  Excuse me.

8          Whether the union sought restitution or not is not

9     critical with respect to this hearing.  Under the statute, as

10    I read it, if the union suffered loss as a result of the

11    conspiracy, restitution has to be ordered by the Court.

12    Whether it goes to the union or some other entity is another

13    problem.

14          If the union suffered no loss, there can't be any

15    restitution.

16          MR. BEECHER:  That's precisely correct.  In my

17    understanding --

18          THE COURT:  I want evidence, sir.  The statute

19    requires the Court to grant restitution.  I set a hearing this

20    morning to find out what the union suffered in the way of loss

21    so that I can provide for restitution as required by the

22    statute.  I am now informed that the government has no

23    evidence --

24          MR. BURLINGAME:  Judge --

25          THE COURT:  -- and that you have no evidence.  I say

15

1    in respectfully.

2         MR. BEECHER:  But for the August 23rd addendum.

3         THE COURT:  That is not evidence.

4         MR. BURLINGAME:  Judge, the --

5         THE COURT:  I am setting a hearing for Friday --

6         MR. BEECHER:  Excuse me, Your Honor.

7         I am not going to be here on Friday.  I will be out

8    of town.

9         THE COURT:  I haven't finished.  Why don't you

10   listen?

11        MR. BEECHER:  I'm sorry.

12        THE COURT:  Five weeks -- two months from today, at

13   10:00 am.  What Friday is that?

14        THE CLERK:  Five weeks?

15        THE COURT:  Make it six weeks.  By that time we

16   should have our capital case finished.

17        THE CLERK:  November 14th.

18        THE COURT:  November 14th, at 10:00 o'clock, there

19   will be an evidentiary hearing, at which time the government

20   will have available evidence, including witness from the

21   union, on the issue of whether the union suffered any loss and

22   how much and who should pay restitution.  I can't decide that

23   issue now.

24        MR. BURLINGAME:  Judge, we will certainly attempt to

25   do that.

16

1          THE COURT:  You'd better do it.  I don't want an

2     attempt.  I have ordered you to do it.

3          MR. BURLINGAME:  3664(g)(1) states that no victim

4     shall be required to participate in any phase of the

5     restitution order.  We can't force the union to come here

6     since they are the victim of the crime.

7          THE COURT:  I am not asking you to force the witness

8     to come here.  I am telling you to have the witness here.

9     This is a court order.  The witness shall be here.

10          Submit an order.

11          Anybody who doesn't want to be here for that hearing

12     need not be here.  You waive your right to be here, and

13     whatever evidence I find requires restitution will be -- make

14     it -- my case coordinator, Ms. Lowe, as you all know, runs

15     these matters, says it's November 14th, at 2:00 pm.

16          So my order is 2:00 pm.

17          Okay?

18          Have the witness here.

19          Does every defense counsel waive the 90-day rule?

20          MR. SHARGEL:  Yes.

21          MS. KELLMAN:  Yes.

22          THE COURT:  They all exuberantly waive the 90-day

23     rule deliberately.

24          Does the government waive the 90-day rule?

25          MR. BURLINGAME:  We do, Judge.

1          I think the only one it is immediately pertinent to

2     is Louis Filippelli.

3          THE COURT:  No.  It is pertinent to Agate,

4     Dragonetti, Scopo and Scotto.  Those are the people from whom

5     you are seeking an order --

6          MR. BURLINGAME:  Correct.

7          THE COURT:  -- for restitution.

8          MR. BURLINGAME:  Correct, Judge.  Sorry.

9          THE COURT:  Those are the only ones I think that are

10    relevant on that point.

11         MR. SHARGEL:  On that issue.

12         THE COURT:  On the union issue.

13         Now, with respect to JD number four, who remains

14    officially nameless, is he seeking restitution?

15         MR. BURLINGAME:  He is, Judge.

16         THE COURT:  He is.

17         All right.  You will have him here as a witness to

18    show his basis for restitution.  I will have evidence on that.

19         MR. BURLINGAME:  I would again specifically refer

20    Your Honor to 18 USC 3664(g)(1), which specifically precludes

21    the Court from forcing a victim of a crime to be here to

22    testify.

23         THE COURT:  The victim of the crime is well-known.

24    I want him here so that I can get evidence with respect to his

25    loss.

18

1        MR. BURLINGAME:  We certainly are willing to put on

2   evidence with respect to --

3        THE COURT:  If you can do it without his presence,

4   that's fine.

5        MR. BURLINGAME:  Thank you, judge.

6        THE COURT:  He may be in danger.

7        Now, at that time I want briefed the serious issue

8   which I have repeatedly raised and which has not been fully

9   briefed, although I've gotten good briefs to a limited degree

10  on the issue, which I have raised on my own motion repeatedly,

11  of whether JD number four was in fact a member of the

12  conspiracy although not so charged to defraud himself as an

13  agent of the government and somebody who was himself

14  benefiting deliberately from the conspiracy.

15        Since the statute itself is so new, there is very

16  little on it.  But there is some legislative history and there

17  is one case, which isn't particularly helpful, but it's the

18  only thing we have at the moment that I am aware of to hang on

19  to.  That's United States v Raifler, R A I F L E R,

20  446 F.3d 65, Second Circuit 2006, particularly referring to

21  the problem, page 120 and following, the definition of a

22  victim, a person directly and proximately harmed, which may

23  bed an issue here, was he personally and proximately harmed or

24  benefited by the conspiracy.

25        That has been a problem that has bothered me.  I

GR      OCR      CM      CRR      CSR

19

1   have raised it with the parties and I haven't received a
2   satisfactory response.  I don't say that critically.  It is a
3   very difficult problem.
4           But I am inclined, based upon the little I know
5   about the case at the moment, not to grant any restitution to
6   number four at all, based on the way I view the statute.
7   However, the question is open.  I have an open mind on it.
8           At this hearing I have set I expect full argument
9   and full briefs on the issue.
10          If you want to say anything at this moment, I will
11  hear you.
12          MR. BURLINGAME:  Sure, Judge.
13          Obviously, we will take the opportunity to brief the
14  issue more fully.  I think it's undisputed that John --
15          MR. SHARGEL:  Can you speak a little louder?
16          MR. BURLINGAME:  I think it is undisputed that John
17  Doe number four was the victim of each of the extortions to
18  which the defendants pled.  So I think it's a strange
19  proposition that he could be a participant in extorting
20  himself.
21          Whether or not he was part of a larger Gambino
22  conspiracy that might have -- that encompassed other
23  instances, other crimes, such as defrauding unions, I think
24  it's in apposite to which these defendants pled guilty which
25  was specifically extorting this victim.  And to the extent

1  that the Court would view it as inappropriate for someone who

2  may have benefited through other crimes as part of the same

3  organization as receiving restitution, then John Doe number

4  four would seek in accord with 18 USC 3664 for him to assign

5  his restitution to the victims Crime Victims Fund in the

6  Treasury which could also be an appropriate result if that was

7  the way the Court is leaning.

8          I think that under --

9          THE COURT:  Yes, I agree.  I am aware of that

10  provision.  But we have the preliminary question of whether he

11  is a victim and was harmed.

12          MR. BURLINGAME:  I think the short answer is that if

13  he is not a victim, then all of these defendants who have

14  already pled guilty and all the rest who have already -- who

15  have already been sentenced and all the rest who have pled

16  guilty did not plead guilty to a crime because there was no

17  victim.

18          THE COURT:  I don't agree with that.

19          MR. BURLINGAME:  You can't have a victimless

20  extortion, in other words.

21          THE COURT:  I don't agree with that.

22          This is a conspiracy to extort.  In a murder case,

23  the defendant may be importuned by the victim, "please shoot

24  me, please kill me."  The person who pulls the trigger is a

25  murderer.  Whether it's also a suicide or not is a fine point.

21

1   It might be an interesting first year criminal course

2   discussion.  It is a nice problem and I know the government

3   has given a great deal of thought to it and I appreciated your

4   brief and I'll appreciate your further briefing.

5           Is there anybody who doesn't believe it's a problem

6   among the defendants?

7           I really think this is a serious issue which has to

8   be considered.  I expect serious consideration by the parties.

9           Is there anything further that you wish to add?

10          MR. SHARGEL:  Judge, the only thing that I want to

11  add is that if we get that far, to the point of an evidentiary

12  hearing, we have made an allegation that victim number four is

13  a person who has unclean hands because he was involving

14  himself in criminal conduct under --

15          THE COURT:  The unclean hands, you have made that

16  point.  But I don't believe that that interesting doctrine of

17  13th century English equity bears when we have Congress

18  adopting a specific statute.

19          So with respect to unclean hands, it is not a very

20  persuasive argument at the moment because we don't have to

21  deliver the money to his unclean hands.  We can deliver the

22  money to the victim fund.

23          MR. SHARGEL:  We did cite a case from the Eastern

24  District of Virginia that recognized unclean hands and

25  actually ruled on that basis.

1          THE COURT:  I understand that.

2          But I am not --

3          MR. SHARGEL:  Bound?

4          THE COURT:  -- bound or impressed.

5          MR. SHARGEL:  I understand that as well.

6          THE COURT:  I think we have a really serious

7    statutory problem here.  We are not going to dodge it with

8    unclean hands.

9          MR. SHARGEL:  May I just say this?

10          If we get to the point of an evidentiary hearing, I

11   think witness should be produced.  We would want to elicit

12   information that's relevant to a determination as to

13   whether --

14          THE COURT:  Issue a subpoena.

15          MR. SHARGEL:  I will do that.

16          THE COURT:  There will be a motion to quash.  I will

17   decide it.

18          MR. SHARGEL:  I will do that.

19          MR. AGNIFILO:  Trying to get to the heart of Your

20   Honor's questions, one of the things that we are going to try

21   to explore, and it is hard to explore it without the benefit

22   of discovery, which we don't have because we've all entered

23   guilty pleas, is certain decisions, certain things that John

24   Doe number four did to insert himself and involve himself in

25   many of these transactions.  We can guess at certain things

1    that he did, but we don't really know many of --

2             THE COURT:  Excuse me.

3             You know everything.  You have had the 3500

4    material.

5             MR. FROCCARO:  I made a request for it in my

6    submission for the 3500 material including the cooperation

7    agreement.

8             We also need his financial records.

9             THE COURT:  Issue a subpoena.  There will be a

10   motion to quash.

11            MR. FROCCARO:  Judge, we would ordinarily be

12   entitled to that.  If they are going --

13            THE COURT:  Issue a subpoena.  There will be a

14   motion to quash.

15            MR. FROCCARO:  Okay.

16            MR. GINSBERG:  With respect to Mr. Scotto there is

17   an additional issue.  He pled to a RICO conspiracy comprising

18   two racketeering acts, neither of which the government seeks

19   restitution for.  The government is seeking restitution from

20   Mr. Scotto for all of the racketeering acts to which anyone

21   pled guilty.

22            THE COURT:  I don't think that precludes the

23   government, that he didn't plead guilty to it.

24            What's the government's view?

25            MR. BURLINGAME:  That's correct, Judge.

```
 1          He pled guilty to the RICO conspiracy.  Under the
 2   case law the --
 3          THE COURT:  Brief it, if you don't think your client
 4   is amenable.  I think probably he is.
 5          MR. GINSBERG:  Thank you.
 6          THE COURT:  Thank you all very much.
 7          Yes?
 8          MS. RESNICK:  As much as it is a pleasure for us to
 9   come back to a hearing, on behalf of Louis Filippelli I would
10   like to ask for the Court's consideration as to a particular
11   problem presented by Louis Filippelli who was sentenced before
12   Your Honor on July 8th and as to whom the particular issue of
13   restitution was raised by the Court and the Court made a
14   ruling that there should be no restitution because at that
15   sentencing, as the Court may recall, the government conceded
16   there was no loss.
17          THE COURT:  The government has now retracted that
18   concession, right?
19          MR. BURLINGAME:  I am not willing without looking at
20   the sentencing minutes to concede that there was such a
21   concession.
22          MS. RESNICK:  Your Honor --
23          THE COURT:  They are retracting it.
24          They can't make a concession waiving statutory
25   requirements.
```

25

1          MS. RESNICK:  But the government had the opportunity

2     to ask for the amount of restitution to remain open.  There

3     was a decision as to restitution.  That decision was a zero

4     because the loss was zero.

5          Under Rule 35(a), there were seven days in which the

6     government had an opportunity to come back and ask for the

7     J and C to be amended.  They did not.

8          We don't believe it is fair or appropriate or

9     statutorily or legally permissible at this point for the

10    government on the 90th day to say, wait a minute.  It's not

11    zero.  The loss wasn't zero.  The restitution isn't zero.

12    It's 62.5 thousand.

13         That cannot be.  They had the opportunity at the

14    time to ask for restitution.  Your Honor made a ruling.  There

15    was an amount of restitution.  That amount is zero.

16         THE COURT:  Okay.

17         MS. RESNICK:  We don't think it is the appropriate

18    time to change that.

19         THE COURT:  Good argument.  Submit your letter, if

20    you don't want to appear at the hearing.  I will have to rule

21    on it.

22         MR. SHARGEL:  May I clarify one thing?

23         Is the JD number four issue to be heard on the 14th

24    as well?

25         THE COURT:  That's the issue, the main issue.

GR      OCR      CM      CRR      CSR

1              MR. SHARGEL:  Your Honor put it on for the union

2    issue.

3              THE COURT:  For the what?

4              MR. SHARGEL:  Your Honor put on the union part of

5    it.  I didn't know whether both parts were on.

6              THE COURT:  Both.

7              MR. SHARGEL:  May I tell you this?  I am scheduled

8    to speak at a CLE conference.  Is there any way of doing it

9    one week later than that?

10             THE COURT:  Sure.

11             Give me the next week, please.

12             I take it, the same waiver applies?

13             MR. SHARGEL:  Yes.

14             THE CLERK:  21st.

15             THE COURT:  The 21st, 2:00 o'clock.

16             MR. BURLINGAME:  Mr. Brownell will not be here on

17   the 21st.  I was wondering if you could push it back perhaps

18   one week or forward?

19             THE COURT:  One more week.

20             THE CLERK:  The week after that is Thanksgiving.

21             That puts us to December 5th.

22             THE COURT:  December 5th?

23             MR. SHARGEL:  We waive.

24             THE COURT:  Everybody waives.  Everybody is

25   agreeable.  2:00 pm?

1          THE CLERK:  Yes.

2          THE COURT:  2:00 pm.  That's December 5, 2:00 pm.

3          MR. BEECHER:  One more administrative question, Your

4     Honor.

5          Do you want any defendants who are scheduled to be

6     sentenced prior to this now December 5th hearing to go forward

7     with their sentences prior to the hearing?

8          THE COURT:  Yes.

9          Anything further?

10         Thank you very much.

11         (Matter concludes.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

1                       I N D E X
2   C O U R T     E X H I B I T S :
3

4    Court Exhibit 1                           5
5    Court Exhibit 2                           5
6    Court Exhibit 3                           5
7    Court Exhibit 4                           5
8    Court Exhibit 5                           5
9    Court Exhibit 6                           5
10   Court Exhibit 7                           5
11   Court Exhibit 8                           5
12   Court Exhibit 9                           5
13   Court Exhibit 10                          5
14   Court Exhibit 11                          5
15   Court Exhibit 12                          5
16   Court Exhibit 13                          5
17   Court Exhibit 14.                         5
18   Court Exhibit 15                          5
19   Court Exhibit 16                          5
20   Court Exhibit 17                          5
21   Court Exhibit 18                          5
22   Court Exhibit 19                          6
23   Court Exhibit 20                          6
24   Court Exhibit 21                          6
25   Court Exhibit 22                          6

29

```
 1    Exhibits Continued:                            6

 2

 3    Court Exhibit 23

 4    Court Exhibit 24                               6

 5    Court Exhibit 25                               6

 6    Court Exhibit 26                               6

 7    Court Exhibit 27                               6

 8    Court Exhibit 28                               6

 9    Court Exhibit 29                               6

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

GR        OCR        CM        CRR        CSR